IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**ARLIN LANG**                                                                                                          **PLAINTIFF**

VS.                                                                         CIVIL ACTION NO. 3:11-cv-238-HTW-LRA

**MISSISSIPPI ORGAN RECOVERY**
**AGENCY, INC.**                                                                                                   **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Before this court is defendant's motion for summary judgment [docket no. 39]. Defendant here is the Mississippi Organ Recovery Agency, Inc. ("MORA"). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure,[1] MORA argues it is entitled to summary judgment because this lawsuit features no genuine issues of fact and that its position is supported by the applicable law. Plaintiff Arlin Lang, however, opposes the motion, contending that factual issues are in dispute that require a jury's determination and which preclude summary judgment. The parties also have filed motions in limine [docket nos. 48, 49, 50, 51, 52, 53, and 54].

This court, having studied the submitted briefs and having reviewed the material

---

[1]Rule 56 of the Federal Rules of Civil Procedure provides in pertinent part:
(a) Motion for Summary Judgment or Partial Summary Judgment.  A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

1

undisputed facts and applicable law, finds that it is persuaded to grant defendant's motion for summary judgment.  The motions in limine concomitantly are deemed moot.  The court's reasoning for these rulings is set out below.

## I.  Facts[2]

### A.   Arlin Lang is Hired by MORA

Plaintiff Arlin Lang, an Hispanic female, was born in Honduras, in Central America.  In early 2009, Lang was working at an organ procurement organization similar to MORA in Colorado Springs, Colorado.  She decided that she wanted to move from Colorado to the Southeastern United States, so that she could live closer to her teenage son who was living in Carthage, Mississippi.  At this time, MORA advertised on the internet a vacant position for its  Hospital Development Coordinator in Hattiesburg, Mississippi.  Lang noticed the advertisement and quickly submitted her application electronically for the position.

MORA afforded Lang an interview thereafter.  The interview consumed a half-day, with  face-to-face interviews with multiple MORA employees, including its Chief Executive Officer ("CEO") Kevin Stump.  Impressed, Stump offered Lang a position as the Director of Corporate Relations in Jackson, Mississippi.  That offer was formalized in a letter to Lang dated May 27, 2009, which also set forth the terms of the offer.  Pursuant to the offer, Lang's first six months of her employment were to be construed as "probationary time."  Further, pursuant to the offer, Lang was to be reimbursed for

---

[2] The facts in this case were presented to the Court through the deposition of Arlin Lang, the deposition of MORA CEO, Kevin Stump, and various documentary evidence attached to the parties' briefs on summary judgment.

2

any expenses that she might incur related to her move to Jackson, Mississippi.

Since Lang emphasizes this part of the offer in her opposition to MORA's motion for summary judgment, the court recites that portion of the offer letter below:

> MORA will pay to relocate you from Colorado Springs to Jackson, MS.  We will cover for you to have your personal items packed, loaded, transported, and unpacked, up to and including your personal vehicle.  We will also provide a $7,000 housing stipend to facilitate your purchase of a home in the Metro Area.  If you leave before the end of two years, half of this stipend will be repaid to MORA.

Lang accepted MORA's offer and signed a letter acknowledging her understanding of the offer.

In June of 2009, Lang moved to Jackson, Mississippi, and she began working at MORA as the Director of Corporate Relations in July.  As part of her new employee orientation at MORA, Lang signed multiple documents acknowledging that she was an "at-will" employee.  Those documents are set out below:

(1) Lang signed a "Handbook Receipt Acknowledgment" in which she affirmed that she understood "that [her] employment is 'at will,' which means that [her] employment may be terminated by [herself] or by MORA at any time for any reason, or for no reason at all, with or without cause or notice."

(2) She executed a "Handbook Acknowledgment Statement" in which she affirmed the following:

> Finally, I understand that regardless of the statements made in this handbook, MORA reserves the right, consistent with applicable laws, and based on the best interest of the Organization to terminate employees at the Organization's discretion.  It is also the policy of the Organization that any employee may voluntarily end his/her employment at any time.

3

>Any Statements to the contrary, unless in writing and signed by the Organization's Chief Executive Officer are disavowed by the Organization and should not be considered valid by the employee.

(3) Lang signed a "Job Description Acknowledgment" in which she made the following affirmation: "I realize neither the job description nor this document creates an employment contract, implied or otherwise, other than an 'at-will' employment relationship."

(4) Lang executed a "Drug and Alcohol Policy Acknowledgment" in which she agreed that MORA's drug and alcohol policy "in no way limits [her] or MORA's right to terminate employment at any time for any reason."

(5) MORA provided Lang with a copy of its Employee Handbook during her orientation. On the first page of Lang's Handbook in italics and labeled "IMPORTANT," the following language appears:

>*Employment at MORA is on an "AT WILL" basis. Neither the employee nor MORA is obligated to continue the employment relationship, and either may choose to end the employment relationship at any time with or without cause. All employment relationships with the organization are therefore "AT WILL" unless a specific employment contract providing otherwise exists with a specific employee and such contract is signed on behalf of the organization by the Executive Director of the organization.*

(6) Repeatedly during the course of her employment, on October 13, 2009, and again on February 5, 2010, Lang signed multiple acknowledgment forms in which she affirmed that she agreed and understood that her employment at MORA was "at will" and could be terminated by herself or by MORA "at any time for any reason."

Lang contends that she competently performed her job duties as the Director of

Corporate Relations. Kevin Stump, her direct supervisor, disagreed. As a result, on February 5, 2010, Stump reassigned Lang to be the Manager of Community Relations. Despite a decrease in her responsibilities, Lang's salary and benefits remained the same and she continued to report to Stump. Lang agrees that the reassignment was "indirectly" her idea because she wanted a change in responsibilities at MORA. From that point in time, Lang focused on increasing organ donation through the registry maintained by the Mississippi Department of Public Safety.

**B.     Arlin Lang is Terminated by MORA**

In June 2010, Lang had lunch with two MORA employees, both of whom were her subordinates. Lang claims that at the lunch meeting, one of the employees complained that he was not getting paid appropriately at MORA because of his African American race. Although Lang supervised the employee and believed that the employee was *not* qualified to perform his job duties, she expressed her belief that he was wrong, that he had opportunities at MORA just like everyone else. In fact, Lang testified at her deposition that she did *not* believe the employee had been treated unfairly at MORA. According to Lang, she is convinced that MORA provided equal opportunity to its employees regardless of race and that MORA gave its employees ample freedom for career advancement within the organization.

Following this lunch meeting, Lang sent a text message to Stump, stating that her subordinate had expressed to her that he was being treated differently at MORA because of his African American race. The following day, Stump met with both Lang and her subordinate and discussed a new assignment for the employee that possibly

5

could result in an increase in his pay. The employee, however, had some misgivings about Lang's involvement, suspicious that Lang actually was trying to get him terminated.

Thereafter, Stump met with Lang and the two employees who over the earlier lunch with her allegedly had discussed their complaints of discrimination. At that meeting, Lang expressed to Stump that her subordinate had told her at their lunch meeting that he was being paid substantially less than a Caucasian employee at MORA because he was African American. Neither of Lang's subordinates supported her version of events. In fact, the two employees denied that either one of them had made any complaints about their salaries to Lang as she claimed. When confronted with their version of events, Lang changed her story and claimed that one of them actually had complained about disparate salaries the day before the scheduled lunch.

Stump was not pleased. Lang's subordinates had challenged her report to Stump of what the subordinates had said and even when any such complaints could have been made. Stump who had before him the two subordinates, as well as Lang, chose to believe the statements made by the two subordinates. He says that he realized he no longer could trust Lang. He terminated her.

When asked about Stump's credibility determination of the three parties (hers and the two subordinates), Lang acknowledges that she understands why Stump did not believe her. She said she understands that it appeared to Stump that she was changing her story, and she "truly believe[s]" that the entire incident was a misunderstanding.

**C.    The Present Action**

On April 25, 2011, Lang filed suit against MORA rasing seven claims: (1) Title VII race discrimination; (2) Title VII gender discrimination; (3) Title VII national origin discrimination; (4) retaliation under Title VII; (5) violation of the Age Discrimination in Employment Act; (6) breach of contract; and (7) detrimental reliance.

The (5) age discrimination claim and the (4) retaliation claim are no longer before the court.  On April 11, 2012, the Court entered the parties' agreed order dismissing with prejudice Lang's claim under the Age Discrimination in Employment Act.  Furthermore, in her response brief to MORA's motion for summary judgment, Lang abandoned her retaliation claim.  This Court is now faced with the disposition of the five remaining claims.

## II.  Jurisdiction

Lang's action is based, in part, on alleged violations of Title VII, a federal statute. This court, then, has subject matter jurisdiction under Title 28 U.S.C. § 1331, which provides that this court has federal question jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States."  Lang also cites this court's jurisdiction granted in Title 28 U.S.C. § 1343(a)(3)-(4),[3] which encompasses lawsuits

---

[3] Title 28 U.S.C. § 1343(a)(3)-(4) states:
(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
   (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
   (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

7

alleging violation of federal civil rights.

### III.  Jurisprudence

**A.     Standard**

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts demonstrating a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Rule 56(c)(1).  The court is only obligated to consider cited materials but may consider other materials in the record.  Rule 56(C)(3).  The court must resolve factual controversies in favor of the nonmovant "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37

F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

**B.     State Law Claims of Detrimental Reliance and Breach of Contract**

As instructed by *Erie R.R. Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, when addressing these state law claims, this court must apply the substantive law of Mississippi.

   **1.     Detrimental Reliance**

In her complaint, Lang asserts a detrimental reliance claim based on an alleged promise from MORA to employ Lang for a minimum of two years. According to her complaint, MORA promised to employ Lang for a minimum of two years and, as a result of this promise, Lang purchased a house in Jackson, Mississippi, thereby causing her to suffer damages.

Two fatal flaws plague Lang's detrimental reliance claim. First, Lang cannot show that MORA ever made a specific promise to employ Lang for any specific length of time. Lang confirmed this fact at her deposition, testifying that MORA never said it would employ her for two years. MORA only agreed to provide Lang with a housing stipend in the amount of $7,000, half of which Lang would have to re-pay if she left MORA before the end of two years. Since this is Lang's sole argument on the point of detrimental reliance, she cannot prevail on this tenuous theory. She simply has no evidence of a promise. *See Solomon v. Walgreen Co.*, 975 F.2d 1086, 1091 (5th Cir. 1992).

Secondly, Lang was an at-will employee at MORA. An "at-will employee cannot establish detrimental reliance in an employer's promises of future employment." *Hilderbrand v. Levi Strauss & Co.*, 2011 WL 765582, * 7 (S.D. Miss. Feb. 25, 2011). That Lang was an at-will employee is not subject to dispute. Numerous times during her employment at MORA, Lang affirmed through signed acknowledgment forms that she was an "at-will" employee. She executed a Handbook Receipt Acknowledgment in which she affirmed her understanding that her employment is at-will. She executed a Handbook Acknowledgment Statement in which she affirmed the same. She signed a Job Description Acknowledgment in which she affirmed that she had an at-will employment relationship with MORA. And, MORA's Employee Handbook, which was provided to Lang during her orientation, stated on its first page in italicized letters that her employment at MORA was "*on an 'AT WILL' basis*" and explained that neither Lang nor MORA was obligated to continue the employment relationship.

All of this uncontroverted evidence establishes conclusively that Lang cannot, as a matter of law, sustain a detrimental reliance claim against MORA. As a result, Lang's detrimental reliance claim is dismissed.

### 2. Breach of Contract

Lang also contends that MORA breached an employment contract with her "when it unlawfully terminated [her], without cause, prior to the expiration of two (2) years." Complaint at ¶ 105. In order to state a breach of contract claim, a plaintiff must show "(1) the existence of a valid and binding contract; (2) breach of the contract by the defendant; and (3) money damages suffered by the plaintiff." *Guinn v. Wilkerson*, 963

So.2d 555, 558 (Miss. Ct. App. 2006).

The only evidence identified by Lang as an employment "contract" with MORA is the offer letter authored by CEO Kevin Stump and dated May 27, 2009. This offer letter does not guarantee Lang employment for two years, as she now claims; rather, the letter states that MORA would provide Lang with a $7,000 housing stipend, half of which she would have to repay if she left MORA's employment before the end of two years. Lang's allegation that this incentive somehow changed her status as an at-will employee is not persuasive. As stated above, even Lang admitted at her deposition that MORA never promised to employ her for any specific length of time.

Since Lang was an at-will employee, MORA could terminate her at any time for "a good reason, a wrong reason, or no reason." *Hammons v. Fleetwood Homes of Mississippi, Inc.*, 907 So.2d 357, 360 (Miss. Ct. App. 2005). She had no employment contract that said otherwise. As a result, Lang's breach of contract claim fails as a matter of law and is dismissed.

**C.    Title VII Discrimination Claims**

Since these claims are federal in character, when addressing these claims, the court must apply federal jurisprudence. *See Hanley v. Forester*, 903 F.2d 1030, 1032 (5th Cir. 1990)(citing *Erie R.Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

**1. Gender Discrimination**

A gender discrimination case proceeds as follows. First the plaintiff must establish a *prima facie* case. To establish a *prima facie* case of discrimination, a

11

plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she was discharged; and (4) (a) similarly situated employees outside the protected class were treated more favorably or (b) she was replaced with a person who is not a member of the protected class. *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973)); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994). Then the burden shifts to the employer to articulate a legitimate nondiscriminatory reason. *Urbano*, 138 F.3d at 206. After the employer meets that burden, the plaintiff has an opportunity to show that the reason offered is pretextual. *Id*.

      The evidentiary protocol above may be summarized as the burden of production. At each stage of the evidence-producing process, a responding party has the burden of meeting material, adverse, submitted evidence or face the prospect of losing the lawsuit. The burden of persuasion, however, always remains with the plaintiff. That burden, which never shifts in a civil case of this type, is preponderance of the evidence; however, plaintiff who fails to meet her production burden may lose her lawsuit at the summary judgment phase and never have the opportunity to submit her lawsuit to a jury for consideration.

      MORA concedes that the plaintiff has met the first and third elements of the *prima facie* case - namely, that she was within a protected class at the time of her termination and that she was terminated. For purposes of this summary judgment argument, MORA does not dispute the second element-that she was qualified for the

position she held.

MORA contends, however, that the plaintiff falls short of establishing the fourth element of the *prima facie* case because she cannot prove that she was ultimately replaced by a male or that she was treated less favorably than similarly-situated male employees. Assuming, arguendo, that the plaintiff has put forth a *prima facie* case of gender discrimination, MORA has articulated a legitimate non-discriminatory reason for Lang's termination, and, therefore, Lang must present evidence that MORA's reason is pretextual.

Lang, however, has failed to identify admissible evidence in the record to establish that MORA's reason for her termination is pretextual. In fact, Lang admitted at her deposition that she does not believe that her gender played a role in her termination from MORA. Lang testified as follows:

> Q. . . . Do you think that you were terminated because you're a woman?
>
> A. No. I think I was terminated because I am really Hispanic, and I was a scapegoat.
>
> Q. Okay. All right. So you don't believe your were terminated based on your gender?
>
> A. I don't – I don't think so. I mean, it could have aided it, but I don't think it was the reason.
>
> Q. And there's no fact that you can point to to say that is proof that I was terminated because I'm a woman?
>
> A. Good – yeah, good point.
>
> Q. Okay. And you agree with that?
>
> A. Yes.

Lang put forth no other record evidence that would satisfy her burden for gender discrimination.

MORA has offered a legitimate, non-discriminatory reason for its employment decision and Lang has not rebutted that reason with evidence that MORA's reason was pretextual for discrimination.  *See Hervey v. Miss. Dep't of Educ.*, 404 Fed. Appx. 865 (5th Cir. 2010) (citing *Laxton v. Gap Inc.*, 333 F.3d 572 (5th Cir.Tex. 2003), and *Rubinstein v. Administrators of the Tulane Educ. Fund*, 218 F.3d 392 (5th Cir.2000) (summary judgment is proper for employer whether the offered reason is accurate or not and even where there is some evidence of pretext if there is overall lack of evidence of discriminatory intent)).  Summary judgment, therefore, is  appropriate on the plaintiff's claim of gender discrimination.

### 2.  National Origin Discrimination

Similar law and analysis apply to the plaintiff's claim of national origin discrimination.  *See Hervey v. Mississippi Dept. of Education*, 404 Fed. Appx. 865, 868 (5th Cir. 2010) (citing *McDonnell Douglas*, 411 U.S. 792, 802-03 (1973)).

Lang testified at her deposition that she does not believe that MORA discriminated against her because she was born in Honduras.  Here are her words:

> Q. . . . Where were you born?
>
> A. In Honduras, Central America.
>
> Q. When did you move to the United States?
>
> A. 1986.
>
> Q. Do you think your termination had anything to do with the fact that you were born in Honduras?

> A. (Witness shakes head negatively.) No, not that I was born there. No.
>
> Q. And there's no fact that you can point to to say this is evidence that I was terminated because I was born some place other than the United States?
>
> A. No. There isn't anything. Uh-huh. (affirmative).

Lang identified no admissible evidence of national origin discrimination and she failed to present evidence that MORA's legitimate non-discriminatory reason for her termination was pretextual. Summary judgment, therefore, is appropriate on the plaintiff's claim of discrimination based on her national origin.

### 3. Race Discrimination

Again, the complainant in a Title VII lawsuit must carry the initial burden of establishing a *prima facie* case of racial discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In order to establish a *prima facie* case of racial discrimination, the plaintiff must establish that she (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone outside the protected class or other similarly-situated employees were treated more favorably. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004).

If the plaintiff establishes a *prima facie* case, "a rebuttable presumption of intentional discrimination attaches and the burden of production shifts to [the defendant] to provide a legitimate, non-discriminatory reason for its adverse employment action." *Hervey v. Mississippi Dept. of Education*, 404 Fed. Appx. 865, 868 (5th Cir. 2010) (citing *McDonnell Douglas*, 411 U.S. 792, 802-03 (1973)). As stated earlier, the burden of persuasion always remains with the plaintiff. *Id*. Once the defendant produces

evidence of a legitimate, non-discriminatory reason for its behavior, the presumption of discrimination is rebutted and the burden shifts back to the plaintiff to show that the defendant's proffered reason was pretextual such that a reasonable jury could infer that the employer's reason for discharging the plaintiff was discriminatory.  *Id.*

Assuming that Lang has established a *prima facie* case of race discrimination, MORA is entitled to summary judgment.  MORA has a legitimate, non-discriminatory reason for terminating Lang.  The plaintiff has put forth no evidence to establish that MORA's reason for her termination is pretextual.

Lang says she was fired as a "scapegoat" because, in Lang's words, MORA would encounter less resistance in firing her rather than discharging her African American subordinate because other African Americans worked at MORA.

This appears simply a subjective belief without a factual basis.  The jurisprudence in this area loudly proclaims that such subjective beliefs are insufficient to maintain a claim under Title VII.  *Kennerson v. Guidry*, 135 Fed. Appx. 639, 641 (5th Cir. 2005) (stating that in "a Title VII employment discrimination or retaliation case, plaintiff's subjective belief [is] an insufficient defense to a summary judgment motion."); *Moore v. McCullough*, 351 F. Supp 2d 536, 541 (N.D. Miss. 2005) (granting summary judgment for the employer when the only evidence offered by the employee to suggest the employer's legitimate, non-discriminatory reason for terminating him was pretextual was the employee's own subjective belief).  Since the jurisprudence here is antagonistic to Lang's reliance on a submission deemed subjective, this court finds that she has failed to satisfy her burden of proof at this production stage.

Lang attempts to add some evidentiary muscle to her claim by referencing an occasion when an employee called her "Taco." Lang aired this matter at her deposition. She acknowledges, however, that this occurred but on a single occasion sometime in 2010.

In order for such a comment to constitute sufficient evidence of discrimination, the comment "must be (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the termination; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001) (internal quotations omitted); *see also Hervey*, 404 Fed. Appx. At 873.

This comment is nothing more than a stray remark that does not qualify as evidence of discrimination. As Lang conceded at her deposition, the employee who made the comment did not have any supervisory responsibility over Lang and had absolutely nothing to do with her termination. Moreover, Lang described the employee as a jokester and she perceived his remark as an ill-placed joke. The comment made by her co-worker was not proximate in time to Lang's termination, was not made by an individual with authority over Lang's employment, and did not relate to the employment decision at issue in this case. As a result, such a single comment cannot, as a matter of law, further Lang's race discrimination claim.[4] Accordingly, this court dismisses the plaintiff's claim of race discrimination as a matter of law.

---

[4] Lang confirmed at her deposition that no one else at MORA ever made any type of derogatory comment to her.

### 4. "Same Actor Inference" as to Title VII Claims

We consider now the "same actor inference." As the Fifth Circuit has recognized, it "hardly makes sense for an employer to hire employees from a group against which [the employer] bears racial animus and then turn around and fire them once they are on the job." *Hervey*, 404 Fed. Appx. at 871. The "same-actor inference" is based on common sense and mitigates against a finding of pretext, requiring a plaintiff like Lang to come forward with more than a tenuous inference of pretext to meet her burden of proof. *Anderson v. Miss. Baptist Med. Ctr.*, 2011 WL 3652210, *3 n.4 (S.D. Miss. Aug. 18, 2011).

No one disputes that MORA's Chief Executive Officer, Kevin Stump, made the decision to hire Lang. Likewise, it is undisputed that Stump made the decision to terminate Lang. As a result, a same actor inference arises here that challenges Lang's assertion that she was terminated because of her race, gender, or national origin. Lang has not offered any credible evidence to undermine this inference.

For all of the foregoing reasons, this court concludes that Lang cannot maintain a claim against MORA under Title VII for alleged discrimination. The court finds that this case features no genuine dispute as to any material facts with regard to her federal claims. This court, therefore, dismisses Lang's gender, national origin, and race discrimination claims, with prejudice.

### IV. Holding

Since the plaintiff Arlin Lang has failed to establish that a genuine dispute as to any material fact exists regarding any of her claims, this court must grant the

defendants' motion for summary judgment [docket no. 39] and dismiss this lawsuit with prejudice.  The parties' motions in limine [docket nos. 48, 49, 50, 51, 52, 53, and 54] are, therefore, moot.  The court will enter a Final Judgment in accordance with the local rules.

SO ORDERED AND ADJUDGED, this the 9th day of September,  2012.

                        /s/ Henry T. Wingate
                UNITED STATES DISTRICT JUDGE

CIVIL ACTION NO. 3:11-cv-238-HTW-LRA
Memorandum Opinion and Order